IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REILLY PARTNERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 CV 311 |
| v. | ) | |
| | ) | |
| FAIR ISAAC CORPORATION and | ) | Wayne R. Andersen |
| MATTHEW D. BECK, | ) | District Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on the motion of Fair Isaac Corporation ("Fair Isaac") and Matthew D. Beck ("Beck") (collectively "defendants") to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is denied with respect to Count I, which alleges breach of contract against Fair Isaac. The motion is granted with respect to Count II, which alleges breach of contract against Beck. Plaintiff Reilly Partners ("Reilly") has also filed a motion to strike portions of defendants' reply brief pursuant to Federal Rule of Civil Procedure 12(f). Because Reilly's motion seeks to strike factual allegations that were not relevant to our decision on the motion to dismiss and were properly included in Fair Isaac's reply to its motion, the motion to strike is denied.

## BACKGROUND

Reilly filed a complaint against defendants on January 16, 2009. The complaint alleges one count of breach of contract against Fair Isaac and one count of breach of contract against Beck. The allegations in the complaint stem from four retainer agreements reached on October 22, 2007 between Reilly and an entity known as River North.

In 2007, Fair Isaac decided to sell its marketing services group. Compl. ¶ 11. As part of this effort, Fair Isaac began the process of divesting this group to become a stand-alone entity. *Id.* Fair Isaac named the division that was to be divested River North. *Id.* Fair Isaac enlisted Joe Paulsen ("Paulsen"), the head of the marketing services division at Fair Isaac, to serve as CEO of River North. Def's Mot. Dismiss at 2. Thereafter, Paulsen engaged Reilly to begin a search for several executives to fill key positions with River North. Compl. ¶ 21. Ultimately, four letter agreements were reached between Paulsen, on behalf of River North, and Simon Blanks, on behalf of Reilly. *Id.* As per these agreements, Reilly initiated its search for candidates to fill the executive positions at River North. *Id.* River North, however, never did become incorporated as a stand-alone entity. Compl. ¶ 13. Shortly after the agreements with Reilly were reached, Fair Isaac decided that the divestment of River North would not occur. Compl. ¶ 24. On October 31, 2007, Reilly received word from Fair Isaac that the River North divestment plan was no longer being pursued. *Id.* Specifically, Matthew Beck, senior director of product management with Fair Isaac sent an email to Reilly informing the company that Fair Isaac had abandoned its plans for River North. Compl., Ex. E. Thereafter, the deal with Reilly collapsed. Compl. ¶ 24.

Reilly's complaint alleges that it fulfilled its obligations under the agreements with River North but did not receive the agreed upon payment for these services. Compl. ¶¶ 22-28. Reilly alleges that liability for this breach of contract rests with the named defendants, Fair Isaac and Beck, because each defendant allegedly acted as a promoter of River North. Compl. ¶¶ 30-42.

On March 19, 2009, defendants moved to dismiss the complaint. We now turn to the

motion to dismiss.

## STANDARD OF REVIEW

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 2009 U.S. LEXIS 34782, at *29, 2009 WL 1361536 (May 18, 2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 2009 U.S. LEXIS 34782, at *29 (citing *Twombly*, 550 U.S. at 556). The complaint must be construed in a light favorable to the plaintiff and the court must accept all material facts alleged in the complaint as true. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 2009 U.S. LEXIS 34782, at *29 (citing *Twombly*, 550 U.S. at 555).

Additionally, a complaint must describe the claim with sufficient detail as to "give the defendants fair notice of what the...claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint does not need to set forth all relevant facts or recite the law. Rather, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996).

## DISCUSSION

### I.   Count I: Breach of Contract Claim Against Fair Isaac

Count I alleges that Fair Isaac, acting as a promoter of River North, entered into and terminated four letter agreements with Reilly without issuing payment for services rendered. Compl. ¶¶ 30-35.  Defendants argue that, because the relevant agreements do not explicitly mention the Fair Isaac Corporation, Fair Isaac is insulated from liability resulting from these agreements.  Def's Mot. Dismiss at 3.

However, the pleadings do not give any indication that Fair Isaac divested the marketing services division it referred to as River North.  Compl. ¶ 13.  Rather, based upon the pleadings it appears that River North remained at all times an unincorporated division of the Fair Isaac Corporation.  *Id.*  Thus, Reilly has properly alleged that Fair Isaac is the appropriate party to sue. An unincorporated division of a corporation is not an independent actor for liability purposes because the division "has no separate assets; all its assets are owned by the organization of which it is a part."  *See Albers v. Church of the Nazarene*, 698 F.2d 852, 857 (7th Cir. 1983); *Salzstein v. Bekins Van Lines, Inc.*, 747 F. Supp. 1281, 1282 n.1 (N.D. Ill. 1990) ("[B]y definition a corporate division is not a separate legal entity and hence is not suable."). Moreover, Joe Paulsen, who signed each of the contracts on behalf of River North, was an employee of Fair Isaac at the time of each agreement.  Resp. to Def.'s Mot. To Dismiss at 7. Thus, Reilly Partners has properly alleged that the four letter agreements were reached between Reilly and Fair Isaac.

Because Reilly has properly alleged its claim of breach of contract against Fair Isaac, we deny defendants' motion to dismiss with respect to Count I of the complaint.

## II.     Count II: Breach of Contract Claim Against Matthew Beck

Count II alleges that Matthew Beck, acting as a promoter of River North, entered into and terminated four letter agreements with Reilly without issuing payment for services rendered. Compl. ¶¶ 37-42. Defendants argue that, because none of the relevant agreements reference Beck, he cannot properly be considered a party to the contracts in question. Def's Mot. Dismiss at 3. Defendants also argue that the allegation that Beck, a Minnesota resident, sent a single email to Reilly in Illinois is insufficient to provide this court with personal jurisdiction over Beck. *Id.* Accordingly, the defendants argue that Count II should be dismissed.

### A. Matthew Beck's Liability for Breach of Contract

The defendants first argue that Beck is not a party to the contracts in question and, therefore, the breach of contract action against Beck should be dismissed. We agree. Beck is a member of the product management department at Fair Isaac. The complaint makes no allegations with respect to Beck's connection with the Fair Isaac marketing services division formerly known as River North. Beck's name does not appear on any of the agreements relevant to this case. Although the complaint makes a conclusory allegation that Beck entered into the disputed contracts, it provides no factual support for this allegation. Compl. ¶ 37. The allegations regarding Beck's potential liability center largely upon a single email sent from Beck to Reilly. Compl. ¶ 24. In its entirety, this email from Beck reads: "I'd like to let you know that effective last night the River North deal is over. Fair Isaac has decided not to sell the business." Compl., Ex. E. The relevant email makes no direct reference to the disputed contracts and in the

absence of other allegations linking Beck with these contracts, the complaint fails to allege facts sufficient to support a cause of action against Beck.

### B. The Exercise of Personal Jurisdiction over Matthew Beck

Second, the defendants assert that the cause of action against Beck should also be dismissed for lack of personal jurisdiction. Because Beck is a citizen of Minnesota, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). This court will exercise jurisdiction over Beck only if it is proper under both the United States and Illinois Constitution. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.,* 42 F. Supp. 2d 821, 828 (N.D. Ill. 1999). Because there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002), there is a single due process inquiry. *APV N. Am., Inc. v. Transindustrial Dev. Corp.*, No. 05 C 2396, 2006 U.S. Dist. LEXIS 4074, 2006 WL 51169, at *5 (N.D. Ill. 2006).

In order to exercise jurisdiction over a non-resident defendant, due process requires the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR*, 107 F.3d at 1277. The meaning of this standard "depends on whether the state asserts 'general' or 'specific' jurisdiction. *Id.* General jurisdiction exists only where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Because Reilly does not assert that Beck has continuous and systematic contacts with Illinois, we focus exclusively on specific jurisdiction. *RAR*, 107 F.3d at 1277.

The exercise of specific jurisdiction requires a determination that the defendant has "purposefully established minimum contacts with the forum State" and that these contacts would make personal jurisdiction fair and reasonable under the circumstances. *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). A defining element of the minimum contacts analysis is a showing that the defendant "should reasonably anticipate being haled into court [in the forum State]," *id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), because the defendant has "purposefully availed itself of the privilege of conducting activities" there. *Burger King*, 471 U.S. at 474-75; *RAR*, 107 F.3d at 1277.

Based upon the legal standard set forth above, we find that Reilly fails to allege facts sufficient to legitimate the exercise of personal jurisdiction over Beck. In breach of contract cases, "only the dealings *between the parties in regard to the disputed contract* at issue are relevant to a specific jurisdiction analysis" (emphasis in original) (internal quotation omitted). *Id.* at 1278. The contracts attached to the complaint do not evidence any contractual dealings between Beck and the plaintiff.

Defendants' attempt to implicate Beck in these dealings by reference to Beck's email to Reilly is also insufficient. The email contains no direct reference to the disputed contracts and cannot itself be deemed the source of the plaintiff's alleged injury. Furthermore, even if the interaction contained in Beck's email was deemed relevant to the disputed contracts, this interaction fails to evidence the purposeful availment necessary to give rise to specific jurisdiction. A single, two-sentence email fails to reflect the contemplated engagement with the forum state necessary to make litigating in Illinois foreseeable to Beck. *Id.* at 1277 (citing

*Burger King,* 471 U.S. at 479). Accordingly, we find that the exercise of personal jurisdiction over Beck by this court would be improper.

For the foregoing reasons, defendants' motion to dismiss Count II is granted. Matthew Beck is hereby dismissed as a defendant in this lawsuit.

## **CONCLUSION**

For the reasons set forth above, defendants' 12(b)(6) motion to dismiss [14] is granted in part and denied in part. The motion is denied with regard to Count I against Fair Isaac, but the motion is granted with respect to Count II against Matthew Beck. Additionally, because the statements identified in the plaintiff's 12(f) motion to strike [26] were not relevant to our decision and were properly included in defendants' reply brief, the motion to strike is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: June 8, 2009